All right, number 212736, United States v. Dean. Hello, Mr. Henderson. Good morning, and may it please the court. I am Peter Henderson. I represent Timothy Dean, who was entrapped by the FBI in this case. I want to start with predisposition because that is the primary element of the defense, and I think it illustrates where the parties are far apart in this case. Can I just ask you something before, because I don't know, in arguing inducement, you asserted that in each step of the conversation, it was the FBI agent and not Dean proposing the prohibited sex acts. But doesn't the transcript of the chat, excuse me, show the opposite and that Dean almost immediately asked to come over to the house? And when asked what he wanted to do, he lists the sex acts he wants to engage in. I mean, you better help us. Sure. Well, the complication here, of course, is that Mr. Dean did initiate a sexual conversation with somebody he believed to be 18. But very briefly, that's what I wanted to ask you about. Yes, he begins this conversation on Grindr, and for just a minute, I'm not sure how long it would take one to read that first column, he thinks he's talking to an 18-year-old. Okay, completely different situation. But the agent quickly says, yeah, I'm good. I just want to let you know I'm 14. Dean says, not 18. Agent, no, frowning emoji. And so Dean doesn't say, oops, have a nice life and leave the chat room. Dean quickly says, so you're not a cop, which doesn't sound like he's backing off. And everything that happens after that, I think, is under the assumption this is a 14-year-old he's talking to. Well, right. I think that the pictures that the agent sends are of a 20-year-old, and I think there is some confusion there about he now has a face to put to this person that he's talking to, and the face is of a 20-year-old. Are you saying that he didn't think he was talking to a 14-year-old then with the pictures? I don't think I can say that in light of the jury verdict, but there's some ambiguity, certainly by the end. It's an ambiguous face. You make the point about the musculature in the one picture, which I think is a decent point. But on the whole and by and large, there's great variation in people aged 14, 18, 20. And it wasn't like he'd put a 50-year-old's picture in there or something. It was plausible. No, that's true. I suppose so. As we go through the conversation, I think what we see is Mr. Dean asking basically for verification, and it's a negotiation, right? On the one hand, he's been convicted of trying to persuade, entice, induce this person to commit a sex act. On the other hand, the FBI is playing along as well and trying to get Mr. Dean to remain interested because that's the case they're building. And so as we go through it, he first asks for pictures, right? After making sure that he's not a cop. No way. That would be a bad move. A bad move, right. So he says, picks. Okay, send some pictures. Asks, okay, well, where actually are you? Is this somebody in a remote setting or are you actually nearby? And Bradley says, yeah, no, I'm nearby. He sends a picture and he says, well, okay, can you host? And what's your experience essentially? It's this negotiation of do I go along with this or do I not? And in each case, the government responds with exactly the tactically sound response. What happened in Jacobson, the FBI did this there as well, is that you mirror the target's basically preferences, right? So we saw at the beginning of the chat, for example, that the FBI agent mirrored the sexual experiences. When we look further down in the chat, it's, well, what's your experience? And the FBI agent clearly sticks to, yeah, I'm going to mirror this. It's building empathy. It's saying we're similar people. It's the same thing. But where's the inducement? I mean, the FBI agent is continuing the conversation, but I don't, it's hard for me to see this as the FBI agent doing the kinds of things we were talking about in Mayfield, kind of luring this person in, in a way that wasn't just providing the opportunity to commit the offense to somebody who's ready to do it. Well, so I think one of the most important parts of this conversation is the normalizing of sexual abuse of children, really, which is what the First Circuit saw in Perez Rodriguez, where the agent doesn't just say, well, this is my experience. The agent says, no, actually, this was beneficial to me. This is something I enjoy. Because I think for, again, when we start with the predisposition, is this a sting or is this an unwary innocence? A person approaching this who's never encountered this, who isn't ready and willing to commit this offense, is probably going to be hesitant to go forward with a 14-year-old, unless that 14-year-old says, no, no, it's cool. I like this. This has been enjoyable for me. It would be a very different scenario if the 14-year-old said, I don't have experience. And Mr. Dean says, well, you know, we can work on that. We can go forward with that. Why isn't that just part of the government ruse that is acceptable? Well, again, I think the First Circuit said – because what we're talking about is we're not just talking about solicitation. It's a plus factor that raises the risk. So it doesn't have to be coercive. It doesn't have to be outrageous. It doesn't have to be egregious. But it raises the risk. But the ruse, the government general ruse tactics aren't plus factors. No, I think they are because the bulk of the cases – Well, they can't because then that would entitle you to an entrapment instruction in almost every undercover case. And that's not the standard. No, I don't think that's correct. I think what – Or that would help you meet inducement for the entrapment standard in every case. Right. I think that inducement is a much lower bar than the government is making it out to be. Most of the work – why the Supreme Court, this court, has said predisposition is the primary element is because that's where most of the work does. So in your typical case, let's say a drug transaction, right, police officers – and, I mean, this has been the law for 90 years. The Supreme Court said they can use artifice. They can use strategies. That's fine when we're targeting somebody who's engaged in criminal activity. But if you're not targeting people engaged in criminal activity, using these same strategies that are designed to facilitate this raises the risk that some unwary person is going to fall into that. So are you arguing that inducement would be met for purposes of getting an entrapment instruction in this type of case every time there's a government ruse or an undercover acting like he's a minor? No, because I think it's a totality of the circumstances. So what's your best plus factor for the inducement element? I think there are two particular ones. One is the photographs. We've seen in other cases where the government has used age-regressed photographs or they've used photographs of the agent when they were actually 14 years old, right? So that's one. It's a fraudulent misrepresentation. We know that that's a plus factor. The other one is the normalization of child sexual abuse because somebody who might be hesitant to engage in this type of conduct, if they are reassured that actually this is beneficial, actually this isn't such a big deal, that raises the risk that they are going to go along with it. There's a third factor, too, that one of the main plus factors is appealing to a sense of camaraderie. We've seen that in the Supreme Court cases. And here we do have this stigmatized social status of a closeted gay man. But there's no evidence that the agent knew he was a closeted gay man. No, but it's still a tactic, and I think we have to take our targets as they come. If you're not targeting criminals, if you're putting out a dragnet, the question is what risk are you creating by using that tactic? He didn't have to be closeted, but there's something to that that reassures the person on the other end. Maybe I'm discreet. Maybe we share some common characteristics. And it happens. Now, 95% of people, they see 14, they're going to shut it down. The other 5% are going to have to think about this or do think about it. Well, that's what Dean does, but I just keep seeing this as the agent is following Dean's lead. And the one time the agent tries to suggest something more intimate, let's say, I'll use euphemisms here, Dean backs off from that. He just says, I'm cool and goes back to the kinds of practices that he has in mind. And so I just, it looks like the government kind of set the table and he sat down. Well, but they set it with some really, I mean, fine china and well furnished. That's the point is at what point do we reach the risk that somebody like Mr. Dean, right? Let's assume for the sake of argument that he was not predisposed prior to the government bringing this up. By introducing all of these elements, the government has increased the risk to what we think is an intolerable level. But somebody will fall for this, just like Mr. Dean did. And in any event, what the Supreme Court, what this court has said over and over, this ought to be a question for the jury. If it's close, if we can have a reasonable debate on it, it should have gone to the jury. So we would ask that the court reverse the verdict. Thank you. Okay. Thank you. Ms. Boyle. Good morning, Your Honors. May it please the court, counsel. My name is Catherine Boyle on behalf of the United States. The defendant in this case, Timothy Dean, met an individual he believed to be a 14-year-old minor on a freezing Valentine's Day in 2020. But he actually didn't seek out a minor. He sought out what he thought was an 18-year-old. At first. So had he gone, I mean, there are certainly, unfortunately, are websites that are set up to involve minors in this kind of activity. But this wasn't what he was doing. So he's lured in by the 18 representation. Yes, Your Honor, that's correct. Grindr has a requirement that users state that their age profile is 18 or older. So the FBI agent certainly said that. By way of background, I do want to note first that the reason the FBI pursues these cases on Grindr as one of the agents testified at trial is because we found child victims, children who are victimized on that application. And I think the important thing here is this is not a situation where Mr. Dean had a long conversation with the undercover agent and was just drawn in over time before he learned that, I'm going to call him Connor for shorthand, that Connor was 14 years old. This is a situation where within the first minute of argument, Connor tells Dean, I'm home alone, I'm new to this, and I've only done certain acts. So that's in the first minute. And the home alone comment, and then he says, mom left me for the weekend, even before he says his age, those things might put Mr. Dean on notice of a potential younger, more inexperienced person here. Although I have to say that argument seems to contradict a little news nugget I saw the other day, which is that the great majority of people between the ages of something awful like 18 and 35 live with their parents still in this country. Maybe it's the housing prices or something. So home alone, mom left me for the weekend, I'm not sure that would distinguish between a 14-year-old and an 18-year-old or a 20-year-old. Sure, although left me certainly seems to imply more of a caretaker role for the mother. But in any case, in this situation, the chat starts at 10.03. By 10.06, the agent tells Mr. Dean, hey, I'm 14 years old. This is extremely quick. This is akin to other cases like Cawthon and Shin, where the agent might be on an adults-only site. In those cases, Craigslist, or I think an adult romance website for Shin. But within very short order, it's made very clear to the defendant that they're dealing with a minor. Now, regarding predisposition, Dean's habit of deleting the apps at best leaves open the possibility that he had engaged in such conduct in the past and was predisposed to do it again. But how can we say that the lack of any trail actually shows predisposition? Is there any other actual evidence of predisposition here? Certainly, Your Honor, and that's a very minor point. We think the main evidence of predisposition, as this court said in Mayfield, really the most important factor here is reluctance. Why isn't it a jury question, though? I mean, certainly there are factors in this record that could support a finding of predisposition. But they don't find anything like this on his phone. They don't find much. There's very little evidence that he's been going after minors before. Well, first of all, Your Honors, as this court has held, we don't even need to reach predisposition because the evidence that there was no government inducement here is so strong. So there's actually – we have to find both factors, and there's really no need to get there. But in any case, there is evidence of predisposition here. Mayfield says that the most important factor is reluctance. But you have to say conclusive evidence, no jury issue on it, right? That's correct, Your Honor. Okay. But we think that the lack of reluctance that Mr. Dean had here was really striking. Why wouldn't his own testimony, though, combine with the fact that there's – he's on Grindr, which you're supposed to be 18 or older to go on there. There's no evidence that he had engaged in any kind of sexual contact or had interest in minors. And he himself has said he wasn't interested in minors, and he testified to that. Why wouldn't that be enough to meet his burden for a jury instruction? I think it's overcome by his lack of reluctance here, and you also have to combine that with the government. For the jury instruction, though? The jury instruction is not – you have to have some evidence. But you'd also need to combine that with the government inducement issue, which I think is very strong for us here because one of the factors you look at in predisposition is what evidence there is of potential government inducement. And here, I think as Your Honor's pointed out recently, it's very clear that – and you can look at the Baer transcript. This is a particularly unique case because you don't even really need the testimony in a certain sense to examine the element of inducement, which also factors into predisposition. It's really just the cold transcript shows you. I think as Your Honor said, all the government was really doing was setting the table, and Mr. Dean sat down. And I'd note on the topic of inducement, this is something that defense counsel for Mr. Dean himself even acknowledged in district court. The attorney said, look, there was not much, a lot of pushing on the part of the government here. That was an easy admission. There wasn't. But the government does seem to – or the agent, quote Connor, does – I don't know. Does elicit the kinds of things that Mr. Dean then picks up on, whether it's my mom's gone, the house to myself. Well, Dean responds to that saying, you know, are you free now? Can you host? And the agent starts – in response to who have you played with, the agent starts talking about sexual activity, not people or, you know, who. It doesn't sound like what were you doing. It sounds like something else. The agent suggests more aggressive acts, and Dean backs off from those. It's close to the line. And so, again, the question is why not let a jury look at this, even if you're confident the jury would have ruled one way? Your Honor, I don't think this is that close to the line. I think the comment, who have you played with, was an attempt by Mr. Dean, a pretty clear attempt to get him to discuss his past sexual experiences on the Grindr site. And I think that in terms of his – my impression from the agent suggesting a different sexual act was that he was trying to, again, emphasize his own lack of experience to Mr. Dean, as opposed to trying to push Mr. Dean into doing something that he hadn't yet expressed an interest in. And I think the opposing counsel even noted that the agent's comments throughout the conversation really more mirrored the types of acts that Mr. Dean had said he was interested in, including after knowing that the undercover agent was 14 years old or that Connor was purportedly 14 years old. And that's important, too. I don't think that this is a situation where you have an undercover agent attempting to push somebody towards more potentially egregious conduct. This is very far afield from, for instance, this Coarse decision in Mayfield. In that case, you have a defendant who was targeted by a confidential informant. There were multiple appeals to their common shared background. He tries to get them to engage in this stash house robbery. It's over a substantial period of time after the defendant repeatedly says no. You then have a financial incentive. The defendant runs into money troubles, and the confidential informant lends him money. Even still, the defendant keeps saying no, and the confidential informant at that point suggests that there's a possibility that the defendant will be in danger, like an actual physical danger, if he doesn't find a way to pay this money back and that, therefore, he should engage in the activity. So I really feel like if you look at the case law in this area where this court has found government inducement, this is just not a close call. This is a situation where Mr. Dean was an active and willing participant, and this is a situation where he prompted a lot of the questions about sexual activity. He was at the minor's house within an hour, which is strikingly quick in the realm of these cases, in my opinion. And additionally, he- And when he saw me, he said, my goodness, you're young. He mentioned when he was traveling to the house, he mentioned how young he was and said that in the context of being nervous. And again, I'd emphasize that the courts have held a defendant's hesitation because they're worried about somebody being a law enforcement officer or something like that doesn't suggest that they are not- that they have been entrapped. If anything, it shows that there was- the criminal design was sort of already in their mind. Your Honors, I see I'm almost out of time. Are there any additional questions you'd like me to address?  Thank you, Your Honors. Thank you very much. Thank you, Your Honors. Well, thank you. Let's give him his three minutes, please. Thank you, Judge Roebner. I suppose that we've had two appellate lawyers arguing what probably should have been an argument before the jury. We obviously feel strongly about whether this evidence is entrapment or absolutely isn't entrapment. There are factors going either way. We think they strongly favor our side, and we think- we doubt that the government can prove beyond a reasonable doubt that Mr. Dean was not entrapped. So part of our burden is a little bit less. But I think that the court ought to look to the First Circuit in Perez-Rodriguez because that was just about identical facts. It's an FBI operation on Grindr. It's inducing people who are regular users of that adult site and giving them an opportunity that they haven't seen before. And whether that's entrapment or not really is a question for the jury. One last thing about- Does the First Circuit apply a different standard for getting the entrapment instruction than we do? I don't recall that from Perez-Rodriguez. I don't know if you have something in mind. I don't think the government has pointed that distinction out. Certainly on predisposition, they went through all the same factors. So in terms of that, it's the same framework as far as I can see. The last thing I'll say about inducement, though, is what the court identified in Mayfield. Again, it is a totality of the circumstances. And repeated attempts at persuasion is one factor. It's not the dispositive factor. There's also fraudulent representations, threats, pleas based on sympathy, friendship, or any other conduct. I mean, the court said there is this catch-all of if we think that the promised reward here is enticing enough, if we think that the government's actions are so calculated that it raises the risk that an unwary innocent is going to fall into this trap, there's inducement. And the government absolutely wanted to induce this. That's the whole point of Operation Cupid's Arrow, is to induce this offense. And they did so. And Mr. Dean fell for it. So, again, we would ask that the court reverse. Thank you. Okay. Well, gosh, thank you very much, Mr. Hunter and Ms. Boyle. And this will be taken under advisement. We're going to take a 10-minute break, please.